UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CHRISTINE N.,

        Petitioner,

   v.

ANDREW SAUL,
Commissioner of Social Security
Administration,

        Respondent.

Case No. 1:19-CV-00409-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Currently pending before the Court for its consideration is Christine N.'s Petition for Review of the Respondent's denial of social security benefits, filed on October 21, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits on February 28, 2017, claiming disability beginning November 1, 2014. The application was denied initially and on reconsideration, and a hearing was conducted on May 22, 2018, before Administrative Law Judge (ALJ) Stephen Marchioro. After considering testimony from Petitioner and a vocational expert, ALJ Marchioro issued a decision on October 16, 2018, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on August 29, 2019.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty years of age. Petitioner lacks formal schooling beyond the eleventh grade. Her prior work experience includes a fifteen-year history of work as a French fry inspector for a large potato processing company.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

**MEMORANDUM DECISION AND ORDER - 2**

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following three issues are raised on appeal:

1.  Did the ALJ reasonably evaluate Petitioner's subjective complaints concerning her symptoms?

2.  Did the ALJ properly evaluate the medical opinions?

3.  Did the ALJ present a complete hypothetical to the vocational expert in support of his residual functional capacity (RFC) finding?

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner contends the ALJ erred with respect to his RFC assessment by concluding that Petitioner could perform light work, which requires the ability to lift up to 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). She argues that the ALJ did not offer specific, clear and convincing reasons supported by substantial evidence in the record,[1] because Petitioner's bilateral upper extremity impairments preclude her from fingering, handling, and gripping objects.[2] Relatedly, Petitioner argues the ALJ improperly rejected the opinions of Petitioner's treating physician, who limited Petitioner to lifting no more than 10 pounds. Had the ALJ credited both Petitioner's testimony and her physician's opinion, Petitioner contends the ALJ would have concluded Petitioner was limited to sedentary work due to her lifting impairments, and therefore would have met Medical Vocational Rule 201.09. This would have resulted in a finding of disabled due to Petitioner's age and education level.

The Court has reviewed the record, and finds that, although there is other evidence

---

[1] Respondent contends that the "clear and convincing" standard is difficult to reconcile with the deferential "substantial evidence" standard. Resp.'s Brief at 3 n. 1. This argument has been repeatedly raised before the Court. Recently, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, No. 19-17102, slip. op. at 23 (9th Cir. Nov. 17, 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id.* at 23 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so that the Court can meaningfully review the ALJ's decision. *Id.* at 22. In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons, and determine whether the evidence is sufficient to support them. The Court finds no conflict.

[2] The ALJ found Petitioner had the following severe impairments: "bilateral carpal tunnel syndrome status post right release, status post left ulnar entrapment surgery; complex regional pain syndrome (CRPS) upper limbs; diabetes mellitus; and hypertension." (AR 18.)

MEMORANDUM DECISION AND ORDER - 4

supporting Petitioner's claims, the ALJ articulated clear and convincing reasons supported by substantial evidence in the record for finding Petitioner's symptom testimony inconsistent with the record. The Court finds also that the ALJ did not commit error in weighing the medical opinion evidence. The Court finds that, although there may be some support for Petitioner's interpretation of the evidence, the Court may not substitute its judgment in this case for that of the Commissioner. Accordingly, the ALJ's RFC assessment was free from legal error. The Court's findings are further explained below.

**1.    Subjective Symptom Testimony**

Petitioner contends that the ALJ erred because his reasons for rejecting Petitioner's testimony were not clear and convincing, and not supported by substantial evidence in the record. (Pet. Brief at 6 – 7, Dkt. 15.) She takes issue primarily with the ALJ's evaluation of her bilateral upper extremity pain and symptoms, which include hand and arm pain. (Pet. Brief at 7 – 12, Dkt. 15.)

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her

MEMORANDUM DECISION AND ORDER - 5

impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[3] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical

---

[3] SSR 96-7p was superseded by SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

**MEMORANDUM DECISION AND ORDER - 6**

sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the record. *See id*. at *6-7.

The ALJ found that, while Petitioner's impairments could reasonably be expected to cause the symptoms alleged, Petitioner's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 22 - 26.) In discounting Petitioner's symptom testimony, the ALJ provided four reasons: (1) Petitioner's allegations of total disability were inconsistent with the medical record; (2) Petitioner received very little medical care in 2017 and 2018; (3) Petitioner's reported activities were inconsistent with her purported level of functional compromise; and (4) Petitioner ceased working for reasons unrelated to her impairments. (AR 21 - 22.)

**MEMORANDUM DECISION AND ORDER - 7**

With respect to the ALJ's first reason, an inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Here, the ALJ found that Petitioner's allegations concerning her neuropathy in both arms, insomnia, irritable bowel syndrome, chronic pain, and other ailments rendering her allegedly disabled were inconsistent with the evidence as a whole. (AR 21.) There were two components to the ALJ's reasoning. First, the ALJ noted that Petitioner reported an "extreme constellation of mental and physical symptoms" on her application for disability, but the record did not support the persistence or severity of the symptoms she alleged. (AR 24.) As an example, the ALJ noted that, in Petitioner's March 13, 2017 application for disability, she reported a multitude of symptoms, including pain, anxiety, dizziness, nausea, stomach aches, poor concentration and balance, an inability to lift anything, headaches, insomnia, feelings of helplessness, and using the bathroom a lot. However, ten days earlier on March 3, 2017, Petitioner complained of none of these symptoms to her primary care physician. (AR 289.) She expressly denied pain, anxiety, dizziness, or symptoms other than abdominal pain, nausea and vomiting related to a

**MEMORANDUM DECISION AND ORDER - 8**

diagnosis of gastritis. (AR 538.) A later visit to her physician on April 11, 2017, contained examination findings that were essentially normal. (AR 24.)

Essentially, the ALJ found that the record belied Petitioner's allegations of disability due to her numerous medical complaints, because she neither complained about them to her primary care physician, nor sought treatment for them. (AR 24.) Petitioner's attempt to provide a rationale for her failure to raise all of her complaints during these two medical visits are unavailing when the record can also support the inference drawn by the ALJ.

The second component to the ALJ's reasoning focused upon Petitioner's bilateral upper extremity symptoms. Again, the ALJ supported his reason for rejecting the degree of limitation alleged by Petitioner with an examination of the medical evidence, which showed some evidence of numbness in Petitioner's fingers as well as mild edema and tenderness in her upper extremities, but otherwise consistently revealed normal sensation; good motor strength; normal reflexes; normal range of motion; and good hand range of motion. (AR 24.) The ALJ noted also that recent medical records from 2017 and 2018 revealed no complaints related to her bilateral upper extremities, no reports of pain, and normal physical examinations. (AR 24.)

The Court reviewed the same records relied upon by the ALJ, and concludes they provide substantial evidence to support the ALJ's first stated reason for finding Petitioner's symptom testimony inconsistent with the record. Petitioner argues that the ALJ should have noted that providers during 2017 and 2018 did not assess her

**MEMORANDUM DECISION AND ORDER - 9**

neurological symptoms with respect to her bilateral upper extremities and hands, and would have come to a different conclusion had they done so. However, the ALJ could just as easily find that a failure to complain about disabling pain meant the provider was not prompted to assess Petitioner's bilateral upper extremity pain more thoroughly. Again, it is not for the Court to second guess the ALJ when the inference the ALJ made is supported by the evidence, even though the same evidence may support an alternative inference.

The ALJ's second reason for discounting the severity of Petitioner's complaints of disabling pain and bilateral upper extremity neuropathy is premised upon Petitioner's scant medical treatment in 2017 and 2018. This evidence suggested to the ALJ that Petitioner's "extreme constellation" of mental and physical symptoms was not as severe as she alleged. (AR 22.)

"[A]n unexplained, or inadequately explained, failure to seek treatment …can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p; *see also* 20 C.F.R. § 416.930 (the Social Security Administration will consider a claimant's physical, mental, educational, and linguistic limitations when determining whether a claimant has an acceptable reason for failure to follow prescribed treatment).

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner argues she did not seek treatment for her bilateral upper extremity pain and neuropathy because she was told by Dr. Kevin Krafft, her treating physician for these conditions, that there was nothing more for him to offer, and therefore she simply sought medication management from her primary care physician during 2017 and 2018. (Pet.'s Brief at 10, Dkt. 15.) However, Petitioner's argument misses the point the ALJ was making. The ALJ took note of Petitioner's March 13, 2017 Function Report. (AR 21, 289 – 296.) In the report, Petitioner indicated that her medical conditions affected her ability to lift, bend, reach, walk, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, understand, and use her hands. (AR 294.) She reportedly could not walk more than 3 blocks, felt sick all of the time, cried a lot, could not grip or lift anything, lost her balance, and felt nauseous and dizzy. (AR 289 – 296, 21.) Yet, as the ALJ noted, despite the constellation of symptoms and resulting effect on her ability to function, she did not seek treatment for any of these ailments throughout 2017 and 2018. (AR 22.) As a result, the ALJ concluded that Petitioner's allegations of severe symptoms that were not exclusively limited to her reaching and fingering abilities were inconsistent with the weight of the evidence. The Court finds the ALJ's reasoning sufficient here. *See Fair*, 885 F.2d at 604; *Regennitter*, 166 F.3d at 1296.

The ALJ's third reason for finding Petitioner's testimony inconsistent with her alleged limitations relies upon her reported daily activities. If a claimant engages in daily activities inconsistent with alleged symptoms, an ALJ may discredit a claimant's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by*

**MEMORANDUM DECISION AND ORDER - 11**

*regulation on other grounds*. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ found that Petitioner's claimed inability to tolerate physical activity and use her upper extremities was inconsistent with her daily activities. The ALJ noted that, despite complaining of pain in her hands and upper extremities aggravated by some activities, such as vacuuming, washing dishes, doing laundry, working on her computer, coloring, gardening, and sweeping, Petitioner still performed these activities. (AR 22.) The Court has reviewed the records the ALJ cited and finds they adequately support his conclusion. (AR 471, 474, 476, 480.) The ALJ could reasonably conclude that Petitioner's daily activities contradicted her claimed inability to tolerate any physical activity or use of her upper extremities, because she engaged in a variety of household tasks, despite exacerbation of pain symptoms. Petitioner's arguments that other evidence in the record supports a different conclusion are, again, unavailing here.

The last reason cited by the ALJ—ceasing work due to reasons other than an alleged disability—may serve as a clear and convincing reason for discrediting Petitioner's symptom testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, although Petitioner claimed a disability onset date of November 1, 2014, Petitioner testified she stopped work in November of 2014 because the company she worked for had closed the plant where she worked. (AR 22; 51 – 52, 277.) The ALJ noted that

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner's treating physician, Dr. Krafft, cleared her to return to work in September of 2015, with the only restrictions being no lifting more than ten pounds, no pushing or pulling in excess of twenty pounds, and no repetitive movements or high force gripping with her hands. (AR 22.) Petitioner did not address this reason given by the ALJ for discrediting her testimony in her opening brief.[4] Based upon the evidence, the Court finds the ALJ did not err with respect to his conclusion that this discrepancy in Petitioner's testimony belied her assertion that she stopped working due to her disabling impairments. Therefore, the Court finds the ALJ articulated a clear and convincing reason, supported by substantial evidence, for rejecting Petitioner's testimony about the reason she ceased working in 2014.

Based upon the above, the Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for rejecting Petitioner's statements about the severity of her subjective symptoms.

## 2.    Medical Opinions

Petitioner argues the ALJ improperly weighed the medical opinion evidence, contending that the ALJ committed reversible error in his evaluation of Dr. Brown's and Dr. Kraft's opinions. Dr. Brown, a Division of Disability Services (DDS) physician, reviewed the record upon Petitioner's request for reconsideration, while Dr. Kraft, a specialist in physical medicine and rehabilitation, was Petitioner's treating physician for

---

[4] A failure to raise a specific challenge in the opening brief results in waiver. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1007 (9th Cir. 2006).

MEMORANDUM DECISION AND ORDER - 13

her bilateral upper extremity neuropathy and pain.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing physician's. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of

nonspecialists, *see id*. § 404.1527(d)(5).[5]

Should the ALJ decide not to give a treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted);

---

[5] The agency has amended the regulations governing medical opinions, but they apply only to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The ALJ correctly applied the rules applicable to Petitioner's claim, which was filed on February 28, 2017. *See* 20 C.F.R. § 404.1527.

**MEMORANDUM DECISION AND ORDER - 15**

*see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### A.  *Dr. Brown's Opinions*

Dr. Brown, a state agency non-examining reviewing physician, completed an assessment of Petitioner's RFC on reconsideration, dated June 6, 2017. Dr. Brown opined that Petitioner's pain and loss of sensation in her upper extremities limited her ability to lift and/or carry more than 25 pounds occasionally, and 10 pounds frequently. (AR 103.) In addition, Dr. Brown was of the opinion that Petitioner's ability to push and/or pull, reach overhead, and finger and handle, was limited to "occasional" on the left side, while her right side was limited to "frequent" in all of the same areas. (AR 104.) Last, Dr. Brown was of the opinion that Petitioner should avoid "concentrated exposure" to vibration, mechanical machinery, and heights, and that she could occasionally climb ladders, ropes, and scaffolds. (AR 105.) Dr. Brown's opinions were based in part upon a review of Dr. Krafft's treatment records as well as Petitioner's more recent medical records from her primary care physician during the first half of 2017. (AR 105.)

The ALJ largely adopted Dr. Brown's opinions, finding them consistent with the evidence as a whole and with a finding that Petitioner could perform light work. The ALJ therefore assigned "considerable weight" to the opinions, not only for that reason but also because Dr. Brown had the opportunity to review more of Petitioner's recent treatment records than the disability services reviewing physicians did at the initial level. (AR 23.) Nonetheless, the ALJ indicated he gave Petitioner the "benefit of the doubt in some areas," and found additional limitations to be warranted. (AR 23.)

Upon review of the ALJ's RFC assessment, it is clear the ALJ disagreed with Dr. Brown in the following areas: limit to "occasional" pushing and pulling with both upper extremities, not just on the left; avoid "all exposure" to vibration with the bilateral upper extremities as well as to unguarded moving mechanical parts and unprotected heights; and never climb ladders, ropes and scaffolds. (AR 20.) The ALJ adopted Dr. Brown's opinion that Petitioner could frequently handle and finger with the right upper extremity, while she could only occasionally reach overhead, handle and finger with the left upper extremity. (AR 20.)[6]

## B.   *Dr. Krafft's Opinions*

Dr. Krafft, a specialist in Physical Medicine and Rehabilitation, treated Petitioner from April 15, 2014, to March 23, 2017. (AR 509 – 513, 523 – 526.) He provided a

---

[6] Petitioner contends the ALJ erred because he failed to elaborate on what additional limitations he adopted over and above Dr. Brown's limitations. (Pet. Brief at 13, Dkt. 15.) However, the Court's comparison of the ALJ's RFC assessment and Dr. Brown's opinion makes clear the differences between the two. The Court finds this argument without merit.

**MEMORANDUM DECISION AND ORDER - 17**

"return to work" evaluation dated September 21, 2015, following a surgical procedure. (AR 23, 246, 257.)[7] Dr. Krafft diagnosed Petitioner with hand pain, left greater than right, and advised that Petitioner could return to work provided she did not lift in excess of 10 pounds, did not push or pull in excess of 20 pounds, and did not perform repetitive movements or high force gripping with either her left or right hand. (AR 257.) His opinions appear to be based upon prior electrodiagnostic testing of both upper extremities.

Electrodiagnostic testing of the left upper extremity performed on May 14, 2014, revealed a mildly abnormal study suggestive of a mild left sensory carpal tunnel syndrome without evidence of radiculopathy or plexopathy. (AR 258.) Electrodiagnostic testing of the right upper extremity performed on July 14, 2014, revealed an abnormal study consistent with a moderate right sensory-motor carpal tunnel syndrome with no evidence of a right upper extremity plexopathy. (AR 261.) Dr. Krafft's examination notes following the electrodiagnostic findings on the July 14, 2014 report reflect that Petitioner reported being able to sweep and vacuum, albeit with some pain after vacuuming. Dr.

---

[7] It is not clear which surgical procedure the ALJ is referring to. The last surgical procedure evident from the medical records was Petitioner's right carpal tunnel release, performed on August 11, 2014, by surgeon Mark Clawson. (AR 246.) Dr. Clawson's treatment notes are not in the record, but are summarized by Dr. Dennis Chong, a physical medicine and rehabilitation specialist. Dr. Chong performed an independent medical examination of Petitioner on June 2, 2016, during the pendency of her workers' compensation suit. (AR 238.) Petitioner ultimately settled her claims under the Idaho Workers' Compensation Law, receiving a lump sum settlement of $10,000 arising out of her work related injuries occurring on or about December 2, 2000, November 8, 2001, and May 5, 2004. (AR 206 – 214.) It is these work related injuries that Petitioner claims resulted in her upper extremity symptoms and precipitated multiple surgeries to correct them. (AR 209 – 210.)

**MEMORANDUM DECISION AND ORDER - 18**

Krafft documented motor strength at 5/5. A third electrodiagnostic study was performed on June 19, 2015, revealing evidence of a moderate right distal median sensory-motor and mild left sensory carpal tunnel syndromes. (AR 263.) According to the clinical findings, Dr. Krafft's impression was that the findings in the right upper extremity were improved from the previous study, while the findings in the left were unchanged.

The ALJ gave considerable weight to Dr. Krafft's opinion that Petitioner was limited to no repetitive/forceful gripping. (AR 23.) However, the ALJ assigned more weight to the lifting limitations as noted by Dr. Brown on reconsideration, discussed above. In support of his determination, the ALJ reasoned that Dr. Krafft did not provide an explanation supporting the ten pound lifting limitation, and the ALJ noted that later treatment notes, including an independent medical evaluation,[8] did not support that level of restriction. (AR 23.) The ALJ stated also that it was not clear whether Dr. Krafft intended the restrictions to be permanent, because they were on a "return to work" form and Dr. Krafft did not indicate whether maximum medical improvement was reached. The ALJ thus concluded Dr. Krafft's opinion with respect to Petitioner's ability to lift was of limited persuasive value, considering it lacked information from which the ALJ could extrapolate whether it was intended as a permanent or temporary restriction. (AR 23, 25.)[9]

---

[8] This reference is to Dr. Chong's evaluation performed on June 2, 2016. *See* n.7, *supra*.
[9] The ALJ's written determination was not consecutively paginated in the record—pages 22 – 25 are not in sequential order.

**MEMORANDUM DECISION AND ORDER - 19**

C.   *Analysis*

Because Dr. Krafft's opinions were contradicted by those of Dr. Brown, and vice versa, the ALJ could reject either opinion, or portions of them, by giving "specific and legitimate reasons" for doing so. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

First, Petitioner argues the ALJ erred by adopting Dr. Brown's opinion regarding Petitioner's ability to utilize her right upper extremity frequently, while limiting her to occasional use of her left upper extremity, which is Petitioner's dominant hand. (Pet. Brief at 14, Dkt. 15.) She argues that the ALJ provided no rationale for this discrepancy, because Dr. Krafft indicated both hands were equally limited and medical records documented Petitioner's non-dominant right hand was not mildly affected.

Stated differently, Petitioner argues the ALJ erred because Dr. Brown's opinions regarding Petitioner's ability to use her upper extremities were not supported by the record, and the ALJ did not give adequate reasons for adopting them. The Court disagrees. The ALJ concluded that Dr. Brown's opinion regarding Petitioner's ability to use her upper extremities for reaching, fingering, and handling was consistent with the medical evidence. This conclusion is supported by the ALJ's reference to later treatment records, such as the treatment note from October 25, 2017, in which Dr. Patterson noted Petitioner described her pain as "0/10" with no change in functional status. (AR 23,

**MEMORANDUM DECISION AND ORDER - 20**

569.)[10] Dr. Patterson noted no edema in Petitioner's extremities. (AR 573.)

Further, Petitioner herself pointed out that later electrodiagnostic studies from June 19, 2015, indicated "left greater than right hand and arm numbness," with improvement on the right from the last study. Dr. Krafft also noted as part of his assessment, that Petitioner was able to sweep and vacuum, and that her left hand pain was greater than the right. The ALJ had the opportunity to review Dr. Krafft's records, Petitioner's workers' compensation file, and other evidence in the record, which the ALJ concluded revealed she generally did not have any edema, typically had normal sensation, and consistently had good motor strength. (AR 21.) The Court finds the evidence discussed by the ALJ, including the electrodiagnostic studies which supported improvement in symptoms on the right and greater pain on the left, provides adequate support for the ALJ's determination that Petitioner could perform the lifting requirements of light work; could frequently handle and finger with the right upper extremity; and, could occasionally reach overhead, handle and finger with the left upper extremity. All are consistent with Dr. Brown's opinions.

Next, Petitioner argues that the ALJ failed to provide any meaningful review of Dr. Krafft's records or provide legally sufficient reasons to reject portions of his opinion while accepting other limitations. (Pet. Brief at 16, Dkt. 15.) She asserts the ALJ erred because he did not consider factors such as the nature and length of the treating

---

[10] The ALJ cited to Exhibit 11F at 11, found at AR 569.

relationship, frequency of examination, and the supportability of the opinion. Petitioner contends that other medical records support Dr. Krafft's opinion restricting her to lifting no more than 10 pounds, contrary to Dr. Brown's assessment that she could lift up to 25 pounds consistent with the requirements of light work.

The ALJ rejected Dr. Krafft's opinion regarding Petitioner's 10 pound lifting limitation on the grounds that he provided no explanation for the same, and later treatment notes did not support that level of restriction. (AR 23.) This conclusion is supported by substantial evidence in the record. For example, the ALJ cited to Dr. Chong's independent review, wherein Dr. Chong noted that x-ray images of Petitioner's right hand taken on August 23, 2014, were normal. (AR 246.) Treatment notes from Dr. Clawson dated February 2, 2015, and reviewed by Dr. Chong, indicated that, with respect to right carpal tunnel syndrome and treatment, Petitioner was "medically stable. No permanent partial impairment." (AR 247.) Dr. Chong noted also that Dr. Krafft provided an impairment rating examination on March 2, 2015, determining there was a 6% upper extremity impairment from left ulnar nerve transposition, but "no impairment to right carpal tunnel syndrome." (AR 247.) Dr. Chong's functional examination results revealed normal strength in bilateral upper limbs, no evidence of focal muscle atrophy in the upper limbs, no focal tenderness of bilateral wrists, and decreased full flexion of fingers of the left when compared to the right. (AR 252.)

The ALJ cited also to additional medical records reflecting that Petitioner exhibited no muscle weakness upon examination (March 7, 2017, AR 516); no edema in

**MEMORANDUM DECISION AND ORDER - 22**

extremities (March 3, 2017, AR 538); no complaints of transient weakness and pain at 0/10 (September 13, 2017, AR 560 – 561); and, she again self-reported pain at 0/10 and that medication for nerve pain "worked very well" (October 25, 2017, AR 569, 573). A conflict between a treating physician's medical opinion and other medical records, including that physician's own notes, is a "clear and convincing reason for not relying on the doctor's opinion," and therefore is also a specific and legitimate reason for rejecting it. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Petitioner also argues that the ALJ provided no rationale for accepting Dr. Kraffts' opinion regarding Petitioner's inability to repetitively use her hands, but assigning Petitioner's non-dominant right hand to frequent handling and fingering, and her dominant left hand to only occasional reaching, handling and fingering. She argues that Dr. Krafft's records indicate both hands were equally affected. However, as discussed above, the ALJ accepted Dr. Brown's assessment of Petitioner's ability to reach, handle and finger with her hands, a conclusion which the Court finds is supported by substantial evidence.

In essence, Petitioner argues the ALJ could have come to a different conclusion in weighing the opinions of Drs. Brown and Krafft had the ALJ interpreted the evidence differently. However, the Court must affirm the ALJ's findings if they are supported by substantial evidence and if the ALJ's decision was free of legal error. 42 U.S.C. § 405(g). *see also Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). "Where evidence is

**MEMORANDUM DECISION AND ORDER - 23**

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

The Court cannot say that the ALJ's interpretation of the medical evidence in conjunction with his evaluation of the medical opinions was not rational. The Court therefore finds the ALJ's conclusions were supported by substantial evidence. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017).

## 3.      Residual Functional Capacity Finding

Petitioner contends that the ALJ provided an incomplete hypothetical to the vocational expert that did not include all of Petitioner's limitations. Petitioner primarily takes issue with the ALJ's conclusion that Petitioner could perform light work, which requires lifting up to 20 pounds and frequent lifting up to 10 pounds, and the ALJ's assessment that Petitioner could use her left upper extremity only occasionally and her right upper extremity frequently. (AR 20.) However, in light of the Court's conclusions above, the Court finds the ALJ's RFC assessment to be free from legal error and supported by his evaluation of Petitioner's symptom testimony and the medical opinion evidence in the record.

## CONCLUSION

Based on the above, the Court finds the ALJ did not commit error and that his determination Petitioner is not disabled is supported by substantial evidence.

**MEMORANDUM DECISION AND ORDER - 24**

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

The Commissioner's decision finding that the Petitioner is not disabled within the

meaning of the Social Security Act is **AFFIRMED** and the petition for review is

**DISMISSED**.

DATED: February 11, 2021

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 25**